HARRIS B. TABACK, Cal. Bar No. 111017
345 Franklin Street, Ste. 102
San Francisco, California 94102
Telephone: (415) 241-1400
Email: htaback@earthlink.net

Attorney for Defendant
JONATHAN EDWARD MILLS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Docket No. 3:14cr00133-001 RS |
| Plaintiff, ) | |
| ) | DEFENDANT'S SENTENCING |
| vs. ) | MEMORANDUM |
| ) | |
| JONATHAN EDWARD MILLS, ) | Date: February 17, 2015 |
| ) | Courtroom: The Honorable |
| ) | Richard Seeborg |
| Defendant. ) | Time: 2:30 p.m. |

## I. INTRODUCTION

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(c), Jonathan Mills entered a plea of guilty to two counts of a violation of Title 18 USC 1343, Wire Fraud. The terms and conditions of the Plea Agreement include that Mr. Mills will be sentenced from 21 to 30 months of imprisonment and ordered to pay restitution. The United States Probation Office has prepared a Pre Sentence Report (PSR) and concluded that the advisory United States Sentencing Guideline (USSG) in this case is Total Offense Level 18, Criminal History Category I, which is consistent with the agreement of the parties. Mr. Mills has no objections to the contents of the PSR and agrees with the sentencing recommendation of 21 months.

Jonathan Mills comes now before the Court requesting that he be sentenced to 21 months imprisonment and ordered to pay restitution as a condition of a term of Supervised Release. An analysis of the factors enumerated in Title 18 USC 3553(a) indicates that such a sentence is

1  sufficient, but not greater than necessary to fulfill the dictates of those factors.

2  **II. BACKGROUND**

3  Jonathan Mills was born in Gainesville, Florida, on February 17, 1984. He is the only child

4  of the marriage of George Mills and Teresa nee Grimes Mills. George Mills was an entrepreneur,

5  who specialized in auto dealerships. He purchased and ran a dealership in Gainesville, which was

6  later found to have been constructed over a previous toxic waste site. Mr. Mills became ill with toxic

7  waste syndrome, had a heart attack at age 59, and died from cancer in 2007. Jonathan was very close

8  to his father and dropped out of college to help with the care of his father. Jonathan's mother is a

9  licensed beautician, who lives and works in Martins Ferry, Ohio. She presently resides with

10 Jonathan's maternal grandmother.

11 Jonathan grew up in Gainesville, Myrtle Beach, South Carolina, and Millers Port, Ohio. He

12 attended public schools, graduating from Miller Port High School in 2002. In retrospect, Jonathan

13 believes that he suffered from attention deficit while in school. His later use of Adderral (a stimulant

14 used to treat attention deficit) and the early benefits he derived from its use, indicated that he could

15 have benefitted from such treatment as a youth.

16 After graduating from high school, Jonathan attended The Ohio State University for 2 ½

17 years. He left school in 2005 to help care for his ailing father, who eventually succumbed to cancer

18 in 2007. He was devastated by the loss of his father. Still grieving, Jonathan moved to the San

19 Francisco Bay Area, where he began to develop an idea for a new technology based company, which

20 eventually became Motionloft, which is at the center of the present case.

21 In 2009 and 2010, Jonathan began to develop a tracking technology that could be used by

22 retailers and municipalities. The technology, based on strategically placed censors, records person

23 and vehicle movements near the targeted site. Retailers can learn how many people walk by their

24 establishments. Municipalities can develop data on vehicle movement on specific streets or

25 intersections. The information can be used for land/street use planning and marketing. It can also be

26 used in the aftermath of disasters.

27

28 DEFENDANT'S SENTENCING
MEMORANDUM [3:14CR00133-001 RS]                2

1   At about the time that Jonathan was developing Motionloft, he was formally diagnosed with
2   Attention Deficit and was prescribed Adderral. At first he used the drug only as prescribed, but has
3   admitted that he enjoyed the effects so much, that he began increasing his dose on his own. The drug
4   helped him focus and he reasoned that it was an aid to his work in developing Motionloft.

5   Jonathan secured financing for his company from initially a single investor. The company
6   grew and remains successful. At the same time, Jonathan's use of Adderral increased. He was
7   focused and he was energetic. He has admitted that his judgment was affected. This in no way
8   excuses his criminal conduct.

9   Jonathan's crime was misrepresenting Motionloft's future to obtain money from victims for
10  his personal use. He claimed that there was a future acquisition deal that did not exist.  Jonathan
11  stated that at first the money was to be used to grow the company. He admits, however, that he used
12  large portions of the money for his own purposes, not for the company. He "raised" approximately
13  $765,000 by the false representations. He repaid  $175,000 to his victims  but still owes $590,000
14  in restitution.

15  To be clear, MILLS has had the opportunity to repay his victims and has not made full
16  restitution.  There is no excuse that Counsel can offer this Honorable Court.  It is Counsel's hope
17  that restitution will be paid during the normal collection process of Supervised Release.

18  ### III. APPLICABLE SENTENCING LAW

19  The landmark decision in *United States v. Booker*, 160 L. Ed. 2d 621, 125 S.Ct. 738
20  (2005), changed sentencing in the Federal Courts.  *Booker*  renders the Guidelines as advisory
21  only, and instructs the sentencing courts to consider the Guidelines in context of all of those
22  factors enumerated in Title 18 USC 3553(a).

23      . . . Section 3553(a) remains in effect, and sets forth numerous factors that guide
        sentencing. Those factors in turn will guide appellate courts, as they have in the
24      past, in determining whether a sentence is unreasonable." *Booker*, at 660-661.

25  The Supreme Court addressed the issue of the "presumption of reasonableness" of a
26  within Guidelines sentence in *Rita v. United States*, 551 S.Ct. 338, 127 U.S. 2456, 168 L.Ed. 2d

27

28  **DEFENDANT'S SENTENCING**
    **MEMORANDUM [3:14CR00133-001 RS]**          3

203 (2007) and instructed that a within Guideline sentence is presumed reasonable only upon **appellate review**. The Court stated:

> "We repeat that the presumption before us is an *appellate* court presumption. Given our explanation in *Booker* that appellate "reasonableness" review merely asks whether the trial court abused its discretion, the presumption applies only on appellate review. The sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines. *18 U.S.C. § 3552(a); Fed. Rule Crim. Proc. 32.* He may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines, to apply, *USSG § 5K2.0*, perhaps because the Guidelines sentence itself fails properly to reflect *§ 3553(a)* considerations, or perhaps because the case warrants a different sentence regardless. See *Rule 32(f)*. Thus, the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure. See *Rules 32(f), (h), (i)(1)©* and *(i)(1)(D)*, see also *Burns v. United States, 501 U.S. 129, 136, 111 S. Ct. 2182, 115 L.Ed. 2d 123 (1991)* (recognizing importance of notice and meaningful opportunity to be heard at sentencing). In determining the merits of these arguments, the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply. *Booker, 543 U.S. at 259-260, 125 S.Ct. 738, 160 L. Ed. 2d 621.*" at 351.

Further, the Court instructed:

> "The fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may adopt a presumption of unreasonableness. Even the Government concedes that the appellate courts may not presume that every variance from the advisory Guidelines is unreasonable." at 354.

The Ninth Circuit was heard on the presumption of reasonableness and directed that even on appeal the presumption of a Guideline sentence may not be reasonable. It stated:

> ". . . A court of appeals may *not* presume that a non-Guidelines sentence is *un*reasonable. Although a court may presume on appeal that a sentence within the Guidelines range is reasonable, *id*, we decline to adopt such a presumption in this circuit." **United States v. Carty**, 520 F.3d 984, 993 (9th Cir. 2008) (en banc).

The Guideline range is simply the beginning of the analysis for sentencing, not the end.

The Ninth Circuit stated:

> "'The Guideline's factor may not be given more or less weight than any other.' So while the Guidelines are the 'starting point and initial benchmark' and must 'be kept in mind throughout the sentencing process,' the Guideline's range constitutes only a touch-stone in the district court's sentencing consideration." **United States v. Autery**, 555 F.3d 864, 8l72 (9th Cir. 2009)

1      ***United States v. Ressam***, 629 F.3d 793, 828 (9th Cir. 2012) (en banc), defined

2   "substantive reasonableness:"

3          "A substantively reasonable sentence is one that is sufficient, but not greater than
           necessary to accomplish §3553(a)(2)'s sentencing goals. The touchstones of

4          'reasonableness' is whether the record as a whole reflects rational and meaningful
           consideration of the factors enumerated in 18 USC §3553(a). In determining

5          substantive reasonableness, we are to consider the totality of the circumstances,
           including the degree of variance for a sentence imposed outside the Guidelines

6          range."

7          The Court must now consider 18 USC 3553(a) in its entirety and impose a sentence

8   "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)

9   of this subsection." The court, in determining the particular sentence to be imposed, shall

10  consider –

11         (1)    The nature and circumstances of the offense and the history and
                  characteristics of the defendant;

12         (2)    The need for the sentence imposed --

13
14                (a)    to reflect the seriousness of the offense, promote respect for the law and
                         provide just punishment for the offense;

15                (b)    to afford adequate deterrence to criminal conduct;

16                (c)    to protect the public from further crimes of the defendant; and

17                (d)    to provide the defendant with needed education or vocational training,
                         medical care or other correctional treatment in the most effective manner;

18
           The sentencing court is now required to consider factors that the Guidelines effectively

19  prohibited from consideration (ie: Age, USSG 5H1.1; Education and Vocational Skills, USSG

20  5H1.2; Mental and Emotional Condition, USSG 5H1.3; Physical Condition Including Drug or

21  Alcohol Dependence, USSG 5H1.4; Employment, USSG 5H1.5; Family Ties and

22  Responsibilities, USSG 5H1.6; Socio-economic Status, USSG 5H1.10; Civic and Military

23  Contributions, USSG 5H1.11; and Lack of Youthful Guidance, USSG 5H1.12.). ***United States v.***

24  ***Ameline***, 409 F.3d 1073, 1093 (9th Cir. 2005) (*en banc*). To consider the "history and

25  characteristics of the defendant," the Court must now consider factors the Guidelines eschewed.

26         Finally, the Supreme Court has cautioned that respect for the law is promoted in many

27
28  DEFENDANT'S SENTENCING
    MEMORANDUM [3:14CR00133-001 RS]          5

1  ways, not always measured by the strictness of sentences or the nature of harsh sanctions. The

2  Court stated:

3         ". . . Moreover, the unique facts of Gall's situation provide support for the District
          Judge's conclusion that, in Gall's case, "a sentence of imprisonment may work to
4         promote not respect, but derision, of the law if the law is viewed as merely a
          means to dispense harsh punishment without taking into account the real conduct
5         and circumstances involved in sentencing." **Gall**, *id.*, at 599.

6         In order to meet the mandate of the ***Booker*** remedy, then, this court must calculate the

7  appropriate guidelines range and may consider appropriate departures. It must also apply the

8  3553(a) factors and address any other specific characteristics of the defendant or his offense that

9  might impact the determination of a "reasonable" sentence under the particular circumstances of

10  this case. The court must then consider the statutory parsimony provision and impose a sentence

11  "sufficient, but not greater than necessary to comply with the purposes set forth in

12  [§3553(a)(2)."] The district court's sentencing decision will then be subject to an abuse-of-

13  discretion review by the circuit. See, ***United States v. Treadwell***, 593 F.3d 990, 999 (9th Cir.

14  2010) (reversal is appropriate only if district court's sentence is "illogical, implausible, or

15  without support in inferences that may be drawn from facts in the record.")

16           **IV. A SENTENCE SUFFICIENT BUT NOT GREATER THAN NECESSARY**

17         There is no doubt that the offense conduct in this case is serious and warrants sanctions as

18  agreed to by the parties. In the face of that seriousness, however, Jonathan Mills presents

19  circumstances of his history and characteristics that suggest that the 21 months as part of the Plea

20  Agreement is sufficient, but not greater than necessary to achieve the goals outlined in Title 18

21  USC 3553(a).  The Probation Officer is in full agreement.

22         In particular, Jonathan has forthrightly accepted responsibility for his conduct and began

23  the precess of making restitution before he was even charged. He has repaid $175,000.

24         Further, at age 30, this is Jonathan's only illegal transgression. His faulty decision making

25  was during a period when he abused Adderral. He clearly has the intellectual ability to recover

26  from this episode in his life and earn a legitimate wage.

27

28  **DEFENDANT'S SENTENCING**
    **MEMORANDUM [3:14CR00133-001 RS]**          **6**

1    Jonathan has now experienced the beginning of the consequences of his conduct. He has

2  already served over 6 months in the San Francisco Halfway House, a significant restriction on his

3  liberty. Presently, he is confined to home detention that began in October, 2014. For almost a

4  year (since February 27, 2014) his movement and activities have been severely limited by either

5  halfway house rules or the rules of home detention.

6    The loss of his company (Motionloft is still in business and doing well) is a devastating

7  consequence of his illegal conduct. He was relieved of his position in December 2013. The

8  company he created is now in the hands of others. It is a tremendous loss to Jonathan, one which

9  he accepts for having violated the law.

10    A sentence of 21 months, particularly following a year of the restrictions in a halfway

11  house and home detention, is a significant deterrent to both Jonathan and anyone else who may

12  be considering violating fraud laws. It is a sentence that recognizes the seriousness of Jonathan's

13  conduct and at the same times factors in the mitigating circumstances.  More to the point, counsel

14  believes that the  mental health counseling MILLS will receive while on SPR will be the force

15  necessary to right his ship that has sailed far from holy waters.

16    Respectfully submitted,

17    LAW OFFICES OF HARRIS B. TABACK

18

19

20  By:    _____

21    HARRIS B. TABACK
    Attorney for Defendant JONATHAN EDWARD MILLS

22

23

24

25

26

27

28  **DEFENDANT'S SENTENCING**
    **MEMORANDUM [3:14CR00133-001 RS]**          **7**