MELINDA HAAG (CABN 132612)
United States Attorney

DAVID CALLAWAY (CABN 121782)
Chief, Criminal Division

KIM A. BERGER (NYBN 2481679)
Assistant United States Attorney

    450 Golden Gate Avenue
    San Francisco, California 94102
    Telephone: (415) 436-7232
    FAX: (415) 436-7234
    kim.berger@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) CASE NO. 14-00133 RS |
|---|---|
| Plaintiff, | ) SENTENCING MEMORANDUM |
| v. | ) Date: February 17, 2015 |
| JONATHAN EDWARD MILLS, | ) Time: 2:30 p.m. |
| Defendant. | ) |

## I. **INTRODUCTION**

The United States respectfully submits this memorandum in connection with the sentencing of Jonathan Edward Mills. On March 13, 2014, the defendant was charged in a six-count Indictment with wire fraud in violation of 18 U.S.C. § 1343, and money laundering in violation of 18 U.S.C. § 1957. On October 7, 2014, the defendant pled guilty to Counts One and Two of the Indictment, charging him with wire fraud in violation of 18 U.S.C. § 1343. The defendant pled guilty pursuant to plea agreement in which he agreed, among other things, that his adjusted offense level is 18. The plea agreement further provided, pursuant to Rule 11(c)(1)(C), that a reasonable disposition of this case is a sentence of imprisonment of no less than 21 months, and no greater than 30 months, to be followed by a term of

1

supervised release of three years. The plea agreement further provided that the defendant will pay a fine of $6,000, and restitution to the victims of his offense to be determined at sentencing. The Probation Department has also concluded that the defendant's adjusted offense level is 18, and based on a Criminal History Category of I, results in a sentencing guidelines range of 27 to 33 months. (PSR ¶¶ 3, 23-32, 65). The Probation Department recommended a sentence of 21 months, followed by a three-term of supervised release. (PSR Sentencing Recommendation.) The United States agrees with the Probation Department's guideline calculations, however, respectfully requests that the Court impose a sentence of imprisonment of 28 months, followed by three years of supervised release with the conditions set forth in the Pre-sentence Report, restitution payments of $593,174 to the victims of his offense as set forth below, and a fine of $6,000. This sentence will appropriately punish the defendant for defrauding the victim-investors of his former company, and send a strong message of deterrence.

## II. GUIDELINES CALCULATION

In determining the appropriate sentence in a criminal case, the Court is charged with determining a sentence that is "sufficient, but not greater than necessary." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). Determination of the appropriate sentence must begin with determination of the applicable Guidelines range. *Id.* The Sentencing Guidelines are "the 'starting point and the initial benchmark,'" *United States v. Kimbrough*, 552 U.S. 85, 108 (*quoting United States v. Gall*, 552 U.S. 38, 49 (2007)), and are to be kept in mind throughout the process. *See Gall*, 552 U.S. at 50, n. 6. Thereafter, the court must evaluate the sentence for substantive reasonableness in light of the factors set forth in 18 U.S.C. § 3553(a). *See Carty*, 520 F.3d at 991-93.

//
//
//
//
//
//
//
//

The United States and the Probation Department agree that the applicable guidelines calculation is as follows:

|  | U.S.S.G. Section | Level/Points |
|---|---|---|
| Base Offense level | 2B1.1(a)(1) | 7 |
| Specific Offense Characteristics | 2B1.1(b)(1)(H) (loss of more than $400,000 but less than $1 million) | +14 |
| Total Offense Level |  | 21 |
| Acceptance of Responsibility | 3E1.1(a)&(b) | -3 |
|  |  | 18 |
| Criminal History Category |  | I |
| **RANGE** |  | 27-33 |

The defendant agreed to the above guideline calculation in his plea agreement, however, the plea agreement provided that, pursuant to Rule 11(c)(1)(C), a reasonable disposition of this case is a sentence of imprisonment of no less than 21 months, and no more than 30 months, a fine of $6,000, restitution to be determined by the Court, but not greater than $590,000, a term of supervised release of three years, and the mandatory special assessment of $200. (Plea Agreement ¶ 8).

## III. SENTENCING RECOMMENDATION

The United States believes that, taking into account the applicable Guidelines range and the factors set forth in 18 U.S.C. § 3553(a), a sentence of imprisonment for 28 months will appropriately punish the defendant for his conduct, reflects the seriousness of the offense, and will send an appropriately strong message of deterrence for the defendant and others who may consider engaging in such conduct.

As set forth in the plea agreement and the Pre-sentence Report, the defendant was the founder and Chief Executive Officer of Motionloft, Inc., from 2010 until he was fired in December 2013. Motionloft is a technology company based in San Francisco that makes and installs sensors that provide real-time and historical information to store and property owners about pedestrian and vehicular traffic. (PSR ¶ 5). Beginning in early 2013, and continuing through December 2013, the defendant executed a scheme to defraud individuals claiming that he had the authority to sell shares in Motionloft, and then told purported investors outright lies about the future of Motionloft, and the value of their investment in the company. Among other things, the defendant told his investor-victims that Motionloft was going to be acquired by a well-known multinational company based in Silicon Valley, although he knew that no such acquisition was in the works. (PSR ¶ 8). He also falsely told his investor-victims that if they gave him money to invest in Motionloft, they would own a stake in the company, and would reap massive profits once the acquisition was completed. (PSR ¶ 8). The defendant also falsely represented to investor-victims that the acquiring company was going to pay hundreds of millions of dollars to acquire Motionloft. (PSR ¶ 8). When his victim-investors began asking questions concerning the promised acquisition, the defendant made another series of outright lies, including blaming the attorneys, the government shutdown, and the financial institutions for the delay, all while knowing that no acquisition was ever planned. (PSR ¶ 10). The defendant then spent substantial amounts of the monies the victim-investors had given him for his personal enjoyment and enrichment, including private jet excursions, renting a penthouse suite, lavish vacations and entertainment. (PSR ¶ 10). In some cases, the defendant used a portion of some victim-investors' money to repay other victims to avoid detection by law enforcement, and to keep his fraudulent scheme going. With respect to one victim, the defendant encouraged her to quit her job, insisting that the purported acquisition would make her rich, and then used the money she gave him to invest for his personal benefit. Based on the defendant's representations, this victim in fact quit her job, while she was pregnant. Another victim was the defendant's physician who gave over $200,000 to the defendant based on his false representations that the acquisition was imminent, and the resulting investment would prove to be very profitable. (PSR ¶ 11).

//

The government submits that a sentence of imprisonment of 28 months is warranted in this case. The offense conduct was a calculated pattern of deception that involved a number of investor-victims, some of whom were the defendant's friends and acquaintances. The defendant created a company, and then lied about a pending acquisition to his investors, that had absolutely no basis in reality, and falsely claimed that the pending acquisition would make their stake in the company very valuable. When investors began asking questions, the defendant told another series of lies to keep the investor-victims from discovering his fraud. The defendant then spent the investors' monies for his own enrichment and enjoyment, including expensive vacations and entertainment. In short, his crime was motivated by greed, and his fraudulent scheme has had a severe impact on many of his victims.

The government has seriously considered all the mitigating factors discussed by the Probation Department: namely that the defendant abused Adderral during the commission of the offense; his lack of criminal history; and the fact that the defendant served six months in a Residential Re-entry Center. The government has also considered all sentencing factors under 18 U.S.C. § 3553(a). Under 18 U.S.C. § 3553(a)(2), the Court must consider the need for the sentence "to promote respect for the law" and "to afford adequate deterrence to criminal conduct." Both promotion of respect for the law and general deterrence are significant sentencing factors in this case. The defendant convinced victims to invest money in his company based on wholly false promises and representations, and then spent the investors' monies on his own personal enjoyment and enrichment. His crime caused serious economic harm to his victims, and is a serious crime that needs a significant sentence in order to deter others from attempting the same crime and to promote respect for the law. The government has weighed the sentencing factors discussed by probation with the aforementioned sentencing factors of needing a sentence that affords adequate deterrence and a sentence that reflects the seriousness of the crime and provides just punishment. After careful analysis, the government believes that a sentence of imprisonment of 28 months is appropriate.

## IV. RESTITUTION

Congress enacted the Victim and Witness Protection Act ("VWPA"), Pub. L. No. 97-291, 96 Stat. 1248 (1982), "to restore restitution to its proper place in federal criminal law by expanding the scope of the federal restitution sanction, by encouraging its increased imposition, and by fostering

improved monitoring and enforcement procedures." *United States v. Miguel*, 49 F.3d 505, 509 (9th Cir. 1995). Congress expanded the availability of restitution in the federal system in 1996, when it passed the Mandatory Victims Restitution Act ("MVRA"), Pub. L. No. 104-132, Tit. II, Subtit. A, 110 Stat. 1227 (1996). The MVRA makes restitution to victims mandatory for specified crimes, including "an offense against property" and "any offense committed by fraud or deceit," 18 U.S.C. § 3663A(c)(1)(A)(ii), "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(a)(1) & (c)(1)(B). The statute retains the definition of "victim" from the VWPA, 18 U.S.C. § 3663A(a)(2), but bars sentencing courts from taking into account "the economic circumstances of the defendant" in ordering restitution. 18 U.S.C. § 3664(f)(1)(A). Courts are instead required to "order restitution to each victim in the full amount of each victim's losses as determined by the court." *Id.*

The MVRA establishes a court's authority to resolve "disputes as to the proper amount or type of restitution . . . by a preponderance of the evidence," to apportion liability, to set payment schedules, and to modify a restitution order previously entered. 18 U.S.C. § 3664(d)(5), (e), (f)(2), (h), and (k). "The district court is not required to make explicit findings to justify its restitution order." *United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008). However, the Ninth Circuit has noted that specific findings of fact may sometimes be necessary when there is a dispute about the proper amount of restitution. *Id.* Because the crimes of conviction were "committed by fraud or deceit," the MVRA applies here.

As set forth in the Pre-sentence report, the victims to the defendant's crimes are owed restitution in a total amount of $593,174, in the following amounts:

    1. S.Y.     $208,174
    2. E.H.     $75,000
    3. M.B.    $20,000
    4. M.L.     $80,000
    5. J.D.     $210,000

It is also worth noting that the defendant has represented to the government and the Probation Department that his sole remaining assets are Bitcoins, which are currently worth between $300,000 and $800,000. (PSR ¶ 60). The defendant further represented that he would attempt to liquidate these assets

so that he could repay the victims of his offense conduct before sentencing. Government counsel, working with defense counsel, gave the defendant an opportunity to conduct a transaction with respect to his Bitcoins so that he would have cash to fully satisfy his restitution obligations. Despite being given this opportunity, the defendant has not yet fully reimbursed the victims of his crimes.

As noted above, the Pre-sentence Report provides the defendant owes restitution in a total amount of $593,174. Although the plea agreement provides that restitution should not exceed $590,000, defense counsel has represented to the government that the defendant has agreed to pay the full amount of restitution owed to his victims, namely $593,174. The United States and the Probation Department agree that the defendant is responsible for restitution to the victims in the amounts set forth above.

## V. CONCLUSION

For the reasons set forth above, the government respectfully submits that this Court should impose a sentence of imprisonment of 28 months, followed by a three-year term of supervised release with the conditions set forth in the Pre-sentence report, a fine of $6,000, and restitution to the victims in the amounts set forth above.

DATED: February 10, 2015

Respectfully submitted,

MELINDA HAAG
United States Attorney

KIM A. BERGER
Assistant United States Attorney